UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL HIPPLE,

    Plaintiff,

v.

MATRIX ABSENCE
MANAGEMENT, INC. et al.,

    Defendants.

_____/

Case No. 13-cv-11059
Hon. Matthew F. Leitman

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF #10); DENYING DEFENDANTS' MOTION FOR JUDGMENT (ECF #11); VACATING THE DETERMINATION OF THE PLAN ADMINISTRATOR; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

This dispute arises out of the termination of Paul Hipple ("Hipple") as an employee of Denso International America, Inc. ("Denso"), and Hipple's subsequent submission of a claim for short-term disability benefits pursuant to the Denso Health & Welfare Plan (the "Plan"). The administrator of the Plan, Matrix Absence Management, Inc. ("Matrix"), denied Hipple's claim for benefits and his administrative appeals on the ground that Hipple was not a participant in the Plan on the date of his disability. Hipple has now filed this action against Denso, Matrix, and the Plan (collectively, the "Defendants") pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for the recovery of short-term disability benefits. The parties have filed cross-motions for judgment on the administrative record. For the reasons discussed below, the Court finds that Matrix's denial of benefits was arbitrary and capricious. The Court **DENIES** both motions for judgment, **VACATES** Matrix's determination on Hipple's claim, and **REMANDS** the matter to Matrix for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

### A.   Hipple's Employment History at Denso

Hipple began working for Denso as a technician in 2004. (Compl. at ¶11.) His tenure as a Denso employee was fraught with misconduct. No fewer than seven times during his employment, Hipple was reprimanded, warned, or otherwise punished for, among other things, "rude and uncooperative behavior toward subordinates, peer[s][,] vendors and customers." (AR 256. *See also id.* at 251-255.)

In addition, Hipple suffered from several medical conditions during his employment with Denso. Based on the voluminous submissions in the administrative record, it appears that Hipple experienced serious back, neck, shoulder, and foot injuries, among other aiments, between 2009 and 2012. (*See id.* at 474-675.) At least three times, Hipple had to take extended medical leaves of absence from his employment at Denso. (*See id.* at 701, 716, 749.)

2

B.      Hipple's Termination and Claim of Disability

June 6, 2012, was an eventful day for Hipple. That day, the Denso Separation Review Committee (the "Committee") met to consider a recommendation by the Management Team and Human Resources that Hipple's employment be terminated for "[g]ross insubordination on several occasions." (*Id.* at 250.) The report presented to the Committee detailed instances of insubordination by Hipple, which appear to have increased in frequency in the months preceding the meeting. (*Id.* at 251-255.) At or about 2:00 p.m., Hipple was informed that his employment with Denso had been terminated. (*Id.* at 109.)

Also on June 6, 2012 – it is unclear at precisely what time – Hipple visited his doctor's office and complained of "back" and "l[ower] l[eft] e[xtremity] pain." (*Id.* at 260.) Based on Hipple's condition, the doctor determined that Hipple was "[u]nable to return to employment at this time." (*Id.*) That same day – again, it is unclear at precisely what time – Hipple called the Matrix "Intake Center" and filed a claim for short-term disability benefits. (*Id.* at 334.) Defendants contend that Hipple visited the doctor and filed his claim for short-term disability benefits *after* being notified of his termination from Denso. (*See* ECF #11 at 8.) Hipple does not dispute this chronology.

3

C. Matrix Denies Hipple's Claim for Disability Benefits

On June 8, 2012, Matrix denied Hipple's claim for benefits. (AR 333-337.) By letter, a claims examiner informed Hipple that she received an email from Denso's human resources department on June 7, 2012, "stating that [Hipple's] last day worked was June 6, 2012 and that on that same date [Hipple] was terminated from [his] employment with Denso." (*Id.* at 334.) The Matrix claims examiner concluded that Hipple was not eligible for short-term disability benefits because he was "not an active employee on [his] date of disability." (*Id.*)

The Matrix claims examiner cited to certain provisions of the Plan's Short-Term Disability Program (the "Program") to support the denial of Hipple's claim. Specifically, the examiner quoted from section II.C.1 of the Program, which provides that "[a] Participant will automatically cease to participate [in the Program] on the … date on which the Participant ceases to be an Associate of the Company." (*Id.* at 333; *see also id.* at 9.) The examiner also cited section III.C.7 of the Program, which states that "[n]o Participant will be entitled to a benefit under [the short-term disability program] if … the period of Disability begins when the Associate is not a Participant in the Program." (*Id.* at 334; *see also id.* at 11.)[1]

---

[1] The Program defines "Disability" as "any physical or mental condition arising from an illness, pregnancy or injury which renders a Participant incapable of performing the material duties of his or her regular occupation or any reasonably related occupation on a full time basis." (*Id.* at 6.)

4

    D. <u>Hipple Twice Appeals the Denial of Benefits; Matrix Rejects Both Appeals</u>

Under the Program, a participant whose claim is initially denied may appeal to Matrix for "a review of the decision made on his or her claim." (*Id.* at 17.) On June 20, 2012, Hipple appealed the denial of benefits. (*Id.* at 340.) In his appeal, Hipple asserted that his managers at Denso had been "aware of [his] medical situation and disability for months." (*Id.*) Hipple claimed that he "was an active employee on the date of disability and [his] insurance was in effect at the time of [his] disability." (*Id.*)

Matrix denied Hipple's appeal on July 8, 2012. (*Id.* at 367-370.) By letter, Matrix informed Hipple that

> [t]he information from your employer indicates you worked on June 6, 2012…. This would make your … first day of disability June 7, 2012. You were terminated from employment on June 6, 2012. Based on this termination you were no longer an Associate under this Program when the period of Disability began. The Program states No [sic] Participant will be entitled to a benefit under this Program if the period of Disability begins when the Associate is not a Participant in the Program.

(*Id.* at 368.) Accordingly, Matrix upheld its denial of Hipple's claim.

The Program provides participants the opportunity for a second appeal of a denied claim (*see id.* at 18), and Hipple, through his attorneys, filed a second

5

appeal with Matrix on January 14, 2013 (*id.* at 413-438).[2] In this appeal, Hipple claimed that he "stopped working on June 6, 2012 due to severe spinal and hip pathologies." (*Id.* at 414.) Hipple included a lengthy discussion of his medical history – including various injuries, surgeries, and medical absences from Denso – dating back to 2008. (*Id.* at 415-434.) He also attached supporting medical records. (*See id.* at 474-675) Hipple asserted that it is an "undeniable fact that [he] was not only disabled as of June 6, 2012, but [he] was disabled long before he filed his disability claim." (*Id.* at 415.)

On March 1, 2013, Matrix once again denied Hipple's appeal. (*Id.* at 689-690.) Matrix noted in this denial letter that Dr. Avner R. Griver ("Dr. Griver") had reviewed Hipple's claim "for both objective evidence to support disability … and eligibility for disability benefits." (*Id.* at 689.) The denial letter quoted Dr. Griver's conclusion that although "the records provided do support a functionally impairing hip condition, given that Mr. Hipple's employment was terminated on [June 6, 2012] … he would not be entitled to benefits under the Program since the period of disability began when he was no longer a Participant…." (*Id.*) Matrix concluded that it would "uphold[] [its] previous decision to deny benefits … beginning June 7, 2012." (*Id.*)

---

[2] The appeal letter is dated "January 14, 2012." However, it is clear from the context of the letter that it should have been dated in 2013.

6

E. Hipple Files this Action and the Parties File Cross-Motions for Judgment

Having exhausted his rights to recourse under the Program, Hipple filed this action on March 8, 2013. (*See* Compl., ECF #1.) In his Complaint, Hipple requests that this Court "enter judgment in [his] favor against Denso, the Plan, and/or Matrix … [and] order the immediate payment of disability income and other employee benefits." (*Id.* at 19.)

The parties have filed cross-motions for judgment on the administrative record. (*See* ECF #10, 11.) The Court held a hearing on the motions on June 6, 2014, and now issues this Order denying both motions, vacating the plan administrator's determination, and remanding this action for further proceedings.

## GOVERNING LEGAL STANDARD

Section 502(a)(1)(B) of ERISA authorizes an individual to bring a civil action "to recover benefits due to him under the terms of [his] plan, to enforce [his] rights under the terms of the plan, or to clarify [his] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The standard of review in this case turns on whether the Plan grants Matrix "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). If the plan

administrator does not have discretionary authority to determine eligibility, then the Court conducts a *de novo* review; however, if the plan administrator does have such authority, then the Court reviews the administrator's action under the "arbitrary and capricious" standard of review. *See id.* In this case, Denso has discretion to "determine eligibility for benefits under the Program" (AR at 22), and Denso has delegated to Matrix "discretionary authority to determine the validity of claims under the Plan" (*id.* at 89). The parties do not dispute that this language gave Matrix discretion to determine eligibility for short-term disability benefits. Accordingly, the arbitrary and capricious standard applies.

"The arbitrary or capricious standard [of review] is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). Further, Hipple has the burden of demonstrating that Matrix acted arbitrarily or with caprice. *See Senzarin v. Abbott Severance Pay Plan for Employees of KOS Pharmaceuticals,* 361 F. App'x 636 (6th Cir. 2010) (citing *Rochow v. Life Ins. Co. of N. Am.,* 482 F.3d 860, 865 (6th Cir. 2007)).

Yet, arbitrary and capricious review "is not ... without some teeth." *Evans v. UnumProvident Corp.,* 434 F.3d 866, 876 (6th Cir. 2006) (internal quotation marks

8

and citation omitted). Indeed, a district court reviewing a plan administrator's determination under the arbitrary-and-capricious standard does not sit merely to "rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004); *see also Hackett v. Xerox Corp. Long–Term Disability Income Plan,* 315 F.3d 771, 774–75 (7th Cir. 2003). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Evans,* 434 F.3d at 876 (quoting *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d at 172).

## **ANALYSIS**

Matrix based the denial of Hipple's claim solely on one ground: because he worked until June 6, 2012 – the date on which he was terminated – he was not "disabled" under the terms of the Program while he was a Participant and, therefore, he was not entitled to benefits. In denying Hipple's claim, Matrix did not evaluate the medical evidence to determine whether, as Hipple claimed, Hipple was in fact disabled *before* his termination – i.e., while was still a Participant in the Program. Rather, Matrix simply *assumed* that because Hipple continued to show up to work until his termination on June 6, 2012, he was not disabled before that date. That assumption is contrary to Sixth Circuit precedent.

9

In *Rochow, supra*, the Sixth Circuit held that an employee can be present at work and receiving a paycheck for his labor and, at the same time, be "disabled" under the terms of the employer's benefit plan. The claimant in *Rochow* suffered from a degenerative neurological disease but, as is the case here, he did not submit a disability claim until after the employer terminated his employment. The plan administrator denied the claim on the ground that the claimant "continued to work [until termination and therefore could not] be considered disabled" while still covered by the plan. *Rochow*, 482 F.3d at 864. The Sixth Circuit held that the denial – resting, as it did, on an unverified *assumption* that the claimant could not have been disabled because he was present at work – was arbitrary and capricious. The court stressed that "there is no 'logical incompatibility between working full time and being disabled from working full time.'" *Id.* at 865, quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). *Rochow* precludes a benefits plan administrator from denying an employee's claim for disability benefits solely because the employee was present at work on or after the alleged disability onset date.

In this case, Hipple alleges that his disability dates back to November 22, 2011; March 2, 2012; May 15, 2012; or June 6, 2012 – all prior to his termination. (*See* Compl. at ¶14.) If Hipple was, in fact, disabled as of these times, then he would be entitled to benefits. (*See* AR at 11 (employee not eligible for benefits if

10

he *became disabled* after ceasing to be a Participant in the Program).) And *Rochow* precludes Defendants from assuming that Hipple was not disabled before his termination simply because he showed up for work; it requires Defendants to examine the medical evidence to determine whether Hipple was, in fact, disabled before his termination – while he was still a participant in the Program. If Hipple's disability arose while he was still a participant, then under the terms of the Program, he would be entitled to benefits – even if he submitted his application after his termination.

Defendants' attempts to distinguish *Rochow* are unsuccessful. Defendants argue that *Rochow* differs from the present case because in *Rochow*, the claimant's employer was aware of his diminished work capacity while the claimant was employed, and the claimant's diminished capacity led directly to his termination. (*See* ECF #13 at 2-3.) Under *Rochow*, however, the cause of an employee's termination is irrelevant – the operative inquiry is whether the claimant became disabled while he was a participant in the plan. Further, it might be the case that Hipple's superiors were aware that he had diminished work capacity in the weeks or months leading up to his termination – however, the administrative record lacks relevant evidence because Defendants conducted no inquiry whatsoever into the merits of Hipple's claim.

11

Matrix's failure to review the medical evidence to determine whether Hipple was, in fact, disabled prior to his termination renders its denial of his claim arbitrary and capricious. Accordingly, this Court will remand this matter to Martix with the direction that Matrix reconsider Hipple's claim and that, in doing so, Matrix review the medical evidence to determine whether Hipple's disability began prior to his termination – and while he was still a Participant in the Program – such that he would be eligible for benefits.

Hipple urges the Court not to remand the case but to issue an award of benefits. Hipple cites to Dr. Griver's statement in the letter denying Hipple's second appeal that "the records provided do support a functionally impairing hip condition" to argue that Defendants have already admitted Hipple's disability. (*See* ECF #10 at 29; *see also id.* at 690.) However, the Court does not believe that Dr. Griver's statement was intended as a conclusion that Hipple was, in fact, disabled under the terms of the Program. Further, Dr. Griver's statements make no findings with respect to the onset date of Hipple's impairments. Accordingly, remand is appropriate to permit Matrix to consider the evidence of record. *See Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006). ("[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator.")

12

The Court will, however, order Matrix to complete its review of the claim on an expedited basis. Hipple has waited far too long for an appropriate review of his claim.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Hipple's motion for judgment on the administrative record (ECF #10) and Defendants' motion for judgment (ECF #11) are **DENIED**.

**IT IS FURTHER ORDERED THAT** Matrix's final determination denying benefits to Hipple (ECF #8 at 689-690) is **VACATED**. The matter is **REMANDED** to Matrix for an additional review of Hipple's claim consistent with the terms of this Order. Matrix shall complete its review of Hipple's claim and issue a final determination no later than **JULY 28, 2014**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 13, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 13, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

13